1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

EDDIE L. FORD,                          )        No. CV-09-3108-LRS
                                        )
                 Plaintiff,             )
                                        )        **ORDER RE SUMMARY**
v.                                      )        **JUDGMENT MOTIONS**
                                        )
CITY OF YAKIMA; LIEUTENANT              )
N. WENTZ; and OFFICER                   )
R. URLACHER,                            )
                                        )
                 Defendants.            )
────────────────────────────────       )

   **BEFORE THE COURT** are the Defendants' Motion For Summary

Judgment (Ct. Rec. 26) and the Plaintiff's Motion For Partial Summary Judgment

(Ct. Rec. 30).  Oral argument was heard on March 10, 2011.  William D. Pickett,

Esq., argued for the Plaintiff.  Robert L. Christie, Esq., argued for the Defendants.


**I.  BACKGROUND**

   This is a 42 U.S.C. Section 1983 action brought against the City of Yakima

and two of its police officers, Ryan Urlacher and Lt. Nolan Wentz for alleged

violations of the Plaintiff's First Amendment rights (Freedom of Speech); Fourth

Amendment (Unreasonable Search and Seizure and Excessive Force); and

Fourteenth Amendment (Due Process and Equal Protection).  Plaintiff also asserts

pendent common law claims for malicious prosecution, abuse of process, and

negligence.  Plaintiff alleges he was the subject of an unlawful traffic stop, an

unreasonable seizure of his person, and an illegal search of his vehicle.  Plaintiff

alleges Urlacher and Wentz arrested him in retaliation for exercising his First

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-          1**

Amendment right to freedom of speech and in conjunction therewith, handcuffed him too tightly.

## II.  FACTS

The detention and arrest of the Plaintiff on July 17, 2007, at approximately midnight, was captured on video, courtesy of the camera mounted on the dash of Officer Urlacher's police cruiser.  As a result of this video and transcript of the same, the parties appear to agree there are no disputed material facts and the court can rule as a matter of law.

## III.  DISCUSSION

### A.  Summary Judgment Standard

The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court.  *Zweig v. Hearst Corp.*, 521 F.2d 1129 (9th Cir.), *cert. denied*, 423 U.S. 1025, 96 S.Ct. 469 (1975).  Under Fed. R. Civ. P. 56, a party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505 (1986); *Semegen v. Weidner*, 780 F.2d 727, 732 (9th Cir. 1985).  Summary judgment is precluded if there exists a genuine dispute over a fact that might affect the outcome of the suit under the governing law.  *Anderson*, 477 U.S. at 248.

The moving party has the initial burden to prove that no genuine issue of material fact exists.  *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348 (1986).  Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id*.  The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325,

**ORDER RE SUMMARY JUDGMENT MOTIONS-         2**

106 S.Ct. 2548 (1986).

In ruling on a motion for summary judgment, all inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmovant. *Matsushita*, 475 U.S. at 587. Nonetheless, summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex*, 477 U.S. at 322-23.

**B.  42 U.S.C. Section 1983**

**1.  First Amendment (Retaliatory Arrest/Booking)**

Criticism of police is not a crime and arresting an individual for such criticism constitutes a violation of First Amendment rights. *Duran v. City of Douglas, Arizona*, 904 F.2d 1372, 1377-78 (9th Cir. 1990), citing *Houston v. Hill*, 482 U.S. 451, 461-63, 107 S.Ct. 2502 (1987). To prevail on a First Amendment retaliation claim, a plaintiff must show: "(1) that the plaintiff 'was engaged in constitutionally protected activity;' (2) that the defendant's actions caused the plaintiff 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity'; and (3) that the 'defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'" *Worrell v. Henry*, 219 F.3d 1197, 1212 (9th Cir. 1999). "A plaintiff may not recover merely on the basis of a speculative 'chill' due to generalized and legitimate law enforcement initiatives." *Mendocino Environment Center v. Mendocino County*, 14 F.3d 457, 464 (9th Cir. 1994). A defendant's desire to cause the chilling effect must be the but-for cause of defendant's actions. *Skoog v. County of Clackamas*, 469 F.3d 1221, 1231-32 (9th Cir. 2006).

A plaintiff need not plead the absence of probable cause in order to state a

**ORDER RE SUMMARY
JUDGMENT MOTIONS-          3**

claim for retaliatory arrest. *Skoog*, 469 F.3d at 1232. [1]  Nevertheless, the U.S. Supreme Court has stated that probable cause has "high probative force" and "probable cause or its absence will be at least an evidentiary issue in practically all such cases." *Hartman v. Moore*, 547 U.S. 250, 265, 126 S.Ct. 1695 (2006). Where the evidence of retaliatory motive is extremely weak, the presence of probable cause is that much more probative.  According to the Ninth Circuit in *Dietrich v. John Ascuaga's Nugget*, 548 F.3d 892, 901 (9th Cir. 2008):

> There is almost always a weak inference of retaliation whenever a plaintiff and a defendant have had previous negative interactions; holding that this case survives summary judgment would provide almost no 'protect[ion for] government officials from the disruption caused by unfounded claims.'

There is no question Officer Urlacher had probable cause to arrest the Defendant for violating the City of Yakima's noise ordinance (YMC 6.04.180). Plaintiff was prosecuted for that offense in Yakima Municipal Court.  Following a bench trial on November 7, 2007, the municipal court judge found there was a "technical violation of the law" because the incident occurred within the City of Yakima, involved a motor vehicle sound system, and the noise could be heard greater than 50 feet from the vehicle.  (Appendix E to Ct. Rec. 29).  Nevertheless, the judge found Plaintiff did not knowingly cause or make or permit the sound to be a public disturbance noise and accordingly, found him not guilty.  Of course, a finding of not guilty based on a beyond a reasonable doubt standard does not eradicate the existence of probable cause which is based on a lesser evidentiary standard.  Based on the totality circumstances, including that the noise could be heard at a distance greater than 50 feet from the vehicle, Officer Urlacher had probable cause to believe the Defendant, who was in the vehicle and controlling the volume on the stereo, was knowingly causing or making or permitting a sound

---

[1]  Absence of probable cause must be established with regard to a claim for retaliatory prosecution.  *Skoog*, 469 F.3d at 1234-35.

**ORDER RE SUMMARY JUDGMENT MOTIONS-      4**

that constituted a public disturbance noise.  The municipal judge's ruling that there was a "technical violation of the law" recognized as much.  Plaintiff is collaterally estopped from questioning the existence of probable cause.

It is necessary and important to look at the entire sequence of events and the totality of the circumstances from beginning to end regarding the stop and arrest of the Plaintiff.  At the intersection of Nob Hill Boulevard and South 1st St., Officer Urlacher came up behind Plaintiff's moving vehicle which proceeded into the left turn lane, but then suddenly made an unsignaled lane change into the left through lane and stopped at the red light.[2]  Officer Urlacher also changed lanes and pulled in behind the Plaintiff's vehicle.[3]  Officer Urlacher had yet to activate his light bar during these events.[4]  At the intersection, Plaintiff got out of his vehicle, looked at the officer in his patrol car, and yelled something (according to Officer Urlacher, it was "why are you following me?").  It was startling and menacing enough to cause the officer to back up his vehicle a little ways.  Officer Urlacher yelled at the Plaintiff to "Go," at which point the Plaintiff got back into his vehicle and proceeded across the intersection.  Officer Urlacher then activated his light bar and the Plaintiff pulled into a nearby parking area.  Once Plaintiff parked the vehicle, he jumped out of the vehicle immediately and began yelling and gesticulating with his arms.  Officer Urlacher, armed with a taser gun, asked the Plaintiff for his

---

[2] At his deposition, Plaintiff testified he wanted to get out of the officer's way, thinking the officer was responding to a call somewhere because of the speed at which the officer's car came upon Defendant's car.  (Ex. A to Ct. Rec. 33 at pp. 5-6).  Officer Urlacher had not,  however, activated the light bar on his patrol car.

[3] Defendant claims Officer Urlacher was right on his bumper (Ex. A to Ct. Rec. 33 at p. 8)., but the video appears to show the typical spacing between vehicles at an intersection.

[4] Urlacher indicated he was running the Plaintiff's license plate and doing a warrant check.  (Appendix A to Ct. Rec. 29 at p. 8, Transcript of COBAN Video).

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-          5**

license and it sounds as though the Plaintiff responded with profanity (i.e, "God-damn license"). Plaintiff did produce his license and gave it to a female officer at the scene (Stacey Cadden). Plaintiff was obviously very agitated and verbally combative, inviting Officer Urlacher to use force, demanding that a sergeant be called out to the scene, accusing Officer Urlacher of racial prejudice, and offering some resistance to Officer Urlacher's command that Plaintiff get back in the vehicle and close the door. Officer Urlacher warned the Plaintiff to "[s]tay in the car or you will go to jail." (Appendix A to Ct. Rec. 29 at pp. 2-4, Transcript of COBAN Video).

Plaintiff contends he was under arrest from the moment he was pulled over (as opposed to it being a *Terry* investigative stop).[5] That appears to be the case since probable cause to arrest was already established by the noise Officer Urlacher heard coming from the Plaintiff's vehicle as it passed him by while he (Urlacher) was stopped at the intersection of Ledwich and Nob Hill Boulevard. Therefore, Plaintiff's arrest was not retaliatory and the question is whether Plaintiff's subsequent handcuffing and booking (transport to jail) were in retaliation for his exercise of free speech. After the Plaintiff got back into his car and closed the door, Officer Urlacher is heard talking to another officer[6], explaining that Plaintiff's "music was blaring" and that is why Officer Urlacher "pulled out of Ledwich behind him." Officer Urlacher then states:

> I think I'm going to arrest him for city noise ordinance violation right now. He might get only a ticket if he cooperates. But with that attitude, he's going to get cuffed.

(Appendix A to Ct. Rec. 29 at p. 5).

_____

[5] *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868 (1968).

[6] At his deposition, Urlacher testified that during this time, he was "running" Plaintiff's license and checking for warrants. (Urlacher Dep. at p. 43, Appendix B to Ct. Rec. 29).

**ORDER RE SUMMARY JUDGMENT MOTIONS-    6**

After he made that statement, Officer Urlacher returned to Plaintiff's vehicle and directed Plaintiff to step out of the car, turn around and face the car, and put his hands behind his back. Although Plaintiff ultimately complied with the instructions and was handcuffed by the female officer (Cadden), he was verbally combative and took issue with the commands, prompting Officer Urlacher to threaten use of the taser, to which Plaintiff responded that Urlacher "can't wait, can you?" When Officer Urlacher told the Plaintiff to "not be an idiot," Plaintiff responded that Urlacher was "the only idiot out here." (Appendix A to Ct. Rec. 29 at pp. 5-6).

An exchange then ensued between Plaintiff and Officer Urlacher in which Officer Urlacher stated: 1) "If you talk over me, you are going to jail, sir. Do not talk over me;" 2) "If you cooperate, I may let you go with a ticket today. If you run your mouth, I will book you in jail for it. Yes, I will, and I will tow your car;" 3) "If you cooperate and shut your mouth, I'll give you a ticket and you can go;" and 4) "[I]f you keep running your mouth . . . [i]f you have diarrhea of the mouth, you will go to jail." After this exchange, Plaintiff was escorted to the back of Officer Urlacher's patrol car. (Appendix A to Ct. Rec. 29 at p. 7).

Officer Urlacher is then heard having a conversation with a male officer and a female officer (Cadden presumably) in which Urlacher states: "I don't know if I'm going to book him yet. I'll see if he's going to shut up or –." (Appendix A to Ct. Rec. 29 at p. 9). At this point, Lt. Wentz arrived on the scene and advised Officer Urlacher that he knew the Plaintiff. Officer Urlacher stated to Lt. Wentz that if "Plaintiff shuts up, I'll let him go with a ticket, but –." (*Id*. at 10). Lt. Wentz then told Officer Urlacher that Plaintiff was a "hot head" who was getting "worse." (*Id*. at 11). Lt. Wentz advised Officer Urlacher "I would not just write a ticket and let him go" and that he (Urlacher) should book the Plaintiff. Officer Urlacher agreed because of the "history" between Lt. Wentz and the Plaintiff. (*Id*.

**ORDER RE SUMMARY JUDGMENT MOTIONS-** **7**

at 12).[7] Officer Urlacher then told the female officer (Cadden), "[w]e're going to book him.  Lt [Lieutenant] says book him.  He's got a history of being violent." (*Id.* at p. 13).

Following this, Officer Urlacher got into his patrol car and told Plaintiff he was going to jail because his music was playing too loud and because Plaintiff "acted a fool."  Officer Urlacher added:  "If you would have acted like a human being towards me, I would have treated you like a human being.  I probably would have, you know - - but you talked yourself into this on video.  It's all well recorded."  (*Id.* at 15).  Later, Urlacher said to Plaintiff: "You're going to jail, No. 1, because your music was too loud and, No. 2, because you acted a fool.  And you jumped out of a car in the middle of an intersection and confronted a police car who didn't even have his [sic] lights on."  (*Id.* at 16).  And yet later, Urlacher told the Plaintiff: "You're going to jail for numerous reasons.  The crime you're going to jail for is the city noise ordinance violation.  A lot of times we tend to cite and release people for that or we give warnings.  However, you tried to - - you acted a fool and . . . we have discretion whether we can book or release you.  You talked yourself - - your mouth and your attitude talked you into jail."  (*Id.* at 17).

The court concludes the handcuffing of the Plaintiff was not retaliatory.  It was not retaliation based on speech, but a justified precautionary measure based on Plaintiff's "attitude" which, up to that time, had been both confrontational and combative.  That leaves the decision to book the Plaintiff (take him to jail), rather

---

[7]  At his deposition, Lt. Wentz testified that sometime between 1993 and 1999, he had investigated Plaintiff for a potential assault upon an individual and that Plaintiff came to Lt. Wentz and demanded that he file a "countercharge" against the individual who said he had been assaulted by Plaintiff.  Lt. Wentz declined to do this and he testified this made the Plaintiff "mad" and "angry." (Wentz Dep. at pp. 38-40, Ex. A to Ct. Rec. 40).  Lt. Wentz was vague, however, about other contacts with the Plaintiff and did not offer a detailed basis for his conclusion that Plaintiff was volatile.  (*Id.* at 58-61).

**ORDER RE SUMMARY
JUDGMENT MOTIONS-      8**

than cite and release him at the scene.  Even though the offense was a misdemeanor, Officer Urlacher had discretion whether to cite and release the Plaintiff or take him into custody pursuant to CrRLJ 2.1(b)(2) (of the rules pertaining to Washington Courts Of Limited Jurisdiction).  That rule provides:

> In determining whether to release the person or to hold him or her in custody, the peace officer shall consider the following factors: (i) whether the person has identified himself or herself satisfactorily; (ii) whether detention appears reasonably necessary to prevent imminent bodily harm to himself, herself, or another, or injury to property, or breach of the peace; (iii) whether the person has ties to the community reasonably sufficient to assure his or her appearance or whether there is a substantial likelihood that he or she will refuse to respond to the citation and notice; and (iv) whether the person previously has failed to appear in response to a citation and notice issued pursuant to this rule or to other lawful process.

Factor (ii) appears to be the only factor potentially applicable to the situation with the Plaintiff.

Up until the time Plaintiff was handcuffed and placed in the back of Officer Urlacher's patrol car, a reasonable person would conclude the Plaintiff presented a potential threat to others and to the preservation of the peace.  At that point, however, Officer Urlacher had still not made up his mind whether to book the Plaintiff. Officer Urlacher still thought the booking (detention) of the Plaintiff might be necessary to prevent a breach of peace, and after speaking with Lt. Wentz, he was persuaded booking was in fact appropriate.  The totality of the circumstances, including the manner in which Plaintiff confronted Officer Urlacher and delivered his criticism, and  not merely the criticism itself, led Officer Urlacher to reasonably conclude booking was warranted.  Accordingly, the booking was not retaliatory.

The totality of the circumstances includes Officer Urlacher's first contact with the Plaintiff to the point at which Plaintiff was handcuffed and placed in the back of the patrol car, followed by Officer Urlacher's conversation with Lt. Wentz.  Considering the totality of the circumstances, no rational jury could

**ORDER RE SUMMARY JUDGMENT MOTIONS-**          **9**

conclude Plaintiff's exercise of his right of free speech was the "but for cause" of his booking. Because it is undisputed there was probable cause to arrest the Plaintiff for violating the city's noise ordinance, and because the Plaintiff acted in a confrontational, agitated, and arguably threatening manner, Officer Urlacher and Lt. Wentz did not arrest and book the Plaintiff for exercising his right to free speech.[8]

## 2. Fourth Amendment Search and Seizure

A warrantless arrest without probable cause is a violation of a person's right to be free from unreasonable searches and seizures, as guaranteed by the Fourth Amendment. *U.S. v. Brignoni-Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574 (1975) (citations omitted). Where a genuine issue of material fact exists that there was probable cause to arrest, that issue must be resolved by the jury. *Menotti v. City of Seattle*, 409 F.3d 1113, 1150 (9th Cir. 2005).

Here, the existence of probable cause to arrest the Plaintiff negates any claim that he was seized in violation his Fourth Amendment rights. The valid arrest permitted a warrantless search of Plaintiff's person and vehicle incident to the arrest.

## 3. Fourth Amendment Excessive Force

Excessive force claims are analyzed under the Fourth Amendment's "objectively reasonable" test. *Graham v. Connor,* 490 U.S. 386, 394-95, 109 S.Ct. 1865 (1989*).* " ' [T]he right to make an arrest ... necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.' "

---

[8] Because the court is ruling as a matter of law that there was no retaliatory arrest/booking and hence, no constitutional violation, it is unnecessary to address the issue of qualified immunity.

**ORDER RE SUMMARY JUDGMENT MOTIONS-      10**

1    *Muehler v. Mena*, 544 U.S. 93, 99 (2005), quoting *Graham*, 490 U.S. at 396.  The

2    force, however, must be "objectively reasonable" in light of the facts and

3    circumstances confronting the officers, without regard to their underlying intent or

4    motivation.  *Graham*, 490 U.S. at 397.  The use of handcuffs is warranted in

5    inherently dangerous settings to minimize the risk of harm to suspects, officers

6    and innocent third parties.  *Muehler*, 544 U.S. at 100.  Alleged injuries reflecting

7    only minimal force are insufficient to qualify as constitutionally excessive or

8    overcome the officers' entitlement to qualified immunity.  *Nolin v. Isbell*, 207 F.3d

9    1253, 1258 (11th Cir.  2000) (Police officer's use of force against arrestee was *de*

10   *minimis*, and thus, officer did not lose his qualified immunity from arrestee's §

11   1983 claim alleging excessive force; officer grabbed arrestee and shoved him a

12   few feet against a vehicle, pushed his knee into the arrestee's back and pushed

13   arrestee's head against the van, searched arrestee's groin area in an uncomfortable

14   manner, and placed the arrestee in handcuffs)*; Bowles v. State*, 37 F. Supp. 2d 608,

15   612 (S.D.N.Y. 1999) (In § 1983 action, arrestee failed to state claim of use of

16   excessive force, where arrestee merely alleged that he was pushed and shoved by

17   officer during search incident to arrest).

18        When Officer Urlacher arrived at the police station with Plaintiff, Plaintiff

19   began complaining about one of the handcuffs being too tight and cutting off his

20   circulation and causing his fingers to tingle.  (Appendix A to Ct. Rec. 29 at pp. 22-

21   23).  Officer Urlacher checked the handcuffs and concluded they were not too

22   tight and comported with department policy in that he was able to fit a pen

23   between Plaintiff's wrists and the handcuffs.  (*Id*. at p. 24).  The record establishes

24   at most a *de minimis* use of force pursuant to standard handcuffing procedure.

25   Plaintiff has not raised a genuine issue of material fact that excessive force was

26   employed and he has not produced any medical evidence establishing he suffered

27   injuries at that time which were more serious than what would be expected from a

28   *de minimis* use of force.  This *de minimis* use of force was reasonable and not

**ORDER RE SUMMARY
JUDGMENT MOTIONS-        11**

excessive.[9]

### 4. Fourteenth Amendment Substantive Due Process

Plaintiff cannot maintain a separate "shocks the conscience" substantive due process claim under the Fourteenth Amendment, as a matter of law, where a specific constitutional amendment provides "an explicit textual source of constitutional protection" against a particular sort of government behavior. *Albright v. Oliver*, 510 U.S. 266, 273, 114 S.Ct. 807 (1994). Plaintiff maintains that being arrested for exercising one's First Amendment rights "shocks the conscience," but obviously, as discussed herein, the First Amendment is the "explicit textual source of constitutional protection" against being arrested/booked for exercising one's right to free speech. Because Plaintiff's First Amendment claim fails as a matter of law, so does any substantive due process claim.

### 5. Fourteenth Amendment Equal Protection

The Equal Protection Clause of the Fourteenth Amendment requires state actors to treat similarly situated people alike. *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249 (1985). Plaintiff apparently is not pursuing this claim on the basis of his race (African American) and has not offered any evidence in that regard. Rather, Plaintiff asserts he was treated differently from those who are arrested for violating the municipal noise ordinance because he was booked instead of merely receiving a citation or a warning. Where the action in question does not involve a suspect classification (i.e., race), a plaintiff

---

[9] Even if there was a genuine issue of material fact about the force being excessive, or even assuming the force was excessive, Officer Urlacher would be entitled to qualified immunity from damages on the basis that a reasonable officer would believe that handcuffing in compliance with standard procedure does not constitute excessive force.

**ORDER RE SUMMARY
JUDGMENT MOTIONS-      12**

may establish an equal protection claim by showing that similarly situated individuals were intentionally treated differently without a rational relationship to a legitimate state purpose. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S.Ct. 1073 (2000).

As discussed above regarding Plaintiff's First Amendment claim, the issue is whether there was a rational basis for booking the Plaintiff for reasons other than his mere exercise of the right to free speech. If there was such a rational basis (i.e., Plaintiff was confrontational, aggressive, verbally combative), there is no First Amendment violation and, in turn, there can be no Fourteenth Amendment equal protection violation. Because Plaintiff's First Amendment claim fails as a matter of law, so does his equal protection claim. There was a rational basis for booking the Plaintiff unrelated to his mere exercise of the right to free speech.

### C. Pendent Common Law Claims

### 1. Malicious Prosecution

The Washington Supreme Court has recognized five separate elements of the common law tort of civil malicious prosecution:  (1) defendant initiated or continued the prosecution claimed to have been malicious; (2) the prosecution of the action lacked probable cause; (3) proceedings were instituted or continued through malice; (4) proceedings terminated on the merits in favor of the plaintiff or were abandoned; and (5) the plaintiff suffered injury or damage as a result of the prosecution. *Hanson v. City of Snohomish*, 121 Wn.2d 552, 558, 852 P.2d 295 (1993).  Malice and want of probable cause constitute the gist of a malicious prosecution claim. *Id*.[10]  Probable cause is a complete defense to a malicious prosecution claim. *Peasley v. Puget Sound Tug & Barge Co.*, 13 Wn.2d 485, 499,

---

[10] "Malice" is a distinct element of a malicious prosecution claim. *See Peterson v. Littlejohn*, 56 Wn.App. 1, 10, 781 P.2d 1329 (1989).

**ORDER RE SUMMARY JUDGMENT MOTIONS-        13**

1    125 P.2d 681 (1942).

2        As discussed above, the municipal court judge found there was probable

3    cause for Plaintiff's prosecution for violating the city's noise ordinance.

4    Accordingly, Plaintiff's common law malicious prosecution claim fails as a matter

5    of law.

6

7        **2.  Abuse Of Process**

8        This claim is asserted against Officer Urlacher.  Abuse of process "is the

9    misuse or misapplication of process, after the initiation of the legal proceeding, for

10   an end other than that which the process was designed to accomplish."  *Saldivar v.*

11   *Momah*, 145 Wn.App. 365, 388, 186 P.3d 1117 (2008).   The party asserting this

12   tort must show both the existence of an ulterior purpose to accomplish an object

13   not within the proper scope of process and an act in the use of legal process not

14   proper in the regular prosecution of the proceedings.  *Id*.  The mere institution of a

15   legal proceeding, even with a malicious motive, does not constitute an abuse of

16   process.  *Id*.

17       In his Complaint, Plaintiff alleges Officer Urlacher engaged in the improper

18   use of legal process with an ulterior purpose of accomplishing an end which the

19   process was not designed to accomplish.  Plaintiff offers no evidence, however, to

20   support this claim and explain why Officer Urlacher could have committed an

21   abuse of process.  The record indicates that while Officer Urlacher may have

22   initiated the criminal proceeding against the Plaintiff, he did not do anything

23   thereafter which could be considered misapplication of the criminal proceeding.

24       Plaintiff's abuse of process claim fails as a matter of law.

25

26       **3.  Negligence**

27       Plaintiff alleges negligence on the part of Officer Urlacher and Lt. Wentz,

28   for which the City of Yakima is vicariously liable.  Plaintiff further alleges the city

**ORDER RE SUMMARY**
**JUDGMENT MOTIONS-**        **14**

is liable for its own negligence in hiring, supervising, and retaining Officer Urlacher and Lt. Wentz.

Defendants allege these negligence claims are barred by the public duty doctrine. Under the public duty doctrine, no liability may be imposed for the negligent conduct of public officials unless it is shown that the duty breached was owed to the injured person as an individual and was not merely the breach of an obligation owed to the public in general. *Taylor v. Stevens County*, 111 Wn.2d 159, 163, 759 P.2d 447 (1988). A general responsibility to the public, rather than to individual members of the public does not create a duty of care. *Osborn v. Mason County*, 157 Wn.2d 18, 28, 134 P.3d 197 (2006). Plaintiff makes no attempt to explain why the public duty doctrine should not apply to his negligence claims. He makes no attempt to explain why his particular circumstance would fall within one of the four exceptions to the public duty doctrine discussed in Defendants' opening brief (Ct. Rec. 28 at pp. 23-26).

Plaintiff's negligence claims fail as a matter of law based on the public duty doctrine.

## III. CONCLUSION

Defendants' Motion For Summary Judgment (Ct. Rec. 26) is **GRANTED** and Plaintiff's Motion For Partial Summary Judgment (Ct. Rec. 30) is **DENIED**. All of the Defendants are awarded judgment on all claims asserted against them.

**IT IS SO ORDERED.** The District Court Executive is directed to enter judgment accordingly and forward copies of the judgment and this Order to counsel of record. The file shall be closed.

**DATED** this ___14th___ day of March, 2011.

*s/Lonny R. Suko*
_____
LONNY R. SUKO
United States District Judge

**ORDER RE SUMMARY JUDGMENT MOTIONS-      15**